# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DEANDRE BRADLEY, <br> # M05197, <br><br> Plaintiff, <br><br> vs. <br><br> JOHN BALDWIN, <br> JEFFREY DENNISON, <br> DR. DAVID, and <br> LIEUTENANT BRADFORD, <br><br> Defendants. | Case No. 19-CV-0205-NJR |

## **MEMORANDUM AND ORDER**

**ROSENSTENGEL, Chief Judge:**

Plaintiff Deandre Bradley, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Menard Correctional Center ("Menard"), brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983 and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, or the Rehabilitation Act, 29 U.S.C. §§ 794-794e. Plaintiff seeks compensatory damages, as well as injunctive relief in the form of criminal charges against Lieutenant Bradford, for injuries that occurred while he was detained at Shawnee Correctional Center ("Shawnee").

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed.

1

28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Complaint

In his Complaint, Plaintiff alleges that Lieutenant Bradford exercised excessive force when he picked him up and dropped him in the chow hall, causing serious spinal damage. In the wake of the injury, he alleges that Dr. David was deliberately indifferent to his serious medical needs that were exacerbated by the assault. Plaintiff also alleges that IDOC Director John Baldwin and Warden Jeffrey Dennison violated the ADA by failing to place him in an accessible cell, ultimately causing extreme isolation and worsening his medical condition.

Plaintiff divided his complaint into seven counts that the Court will honor as follows:

**Count 1:** **Defendants John Baldwin and Jeffrey Dennison violated Plaintiff's rights under the ADA by denying him an accessible cell or a transfer to a facility with accessible cells;**

**Count 2:** **Defendants John Baldwin and Jeffrey Dennison violated the Illinois Isolated Confinement Act by detaining him in *de facto* solitary confinement due to his physical limitations;**

**Count 3:** **Defendant Bradford exhibited deliberate indifference under the Eighth Amendment when he lifted Plaintiff and violently dropped him on the ground;**

**Count 4:** **Defendant Bradford violated Illinois tort law because his physical actions constituted assault and battery;**

**Count 5:** **Defendant Bradford violated Illinois law by committing an aggravated assault because he knew the person assaulted had a physical disability;**

**Count 6:** **Defendant Dr. David exhibited deliberate indifference to Plaintiff's serious medical need because he did not send Plaintiff to a spinal cord injury specialist; and**

**Count 7:** **Defendant Dr. David exhibited deliberate indifferent to Plaintiff's serious medical need by failing to provide**

> **appropriate treatment or accommodations for his worsening scoliosis.**

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[1]

Plaintiff alleges that during his time at Shawnee he was ultimately confined to the infirmary, which prevented him from getting any exercise or social time for approximately 160 of his 168 days at the facility (Doc. 1 at 3-4). He alleges that he sought library time, yard time, the opportunity to sit outside his cell, and the ability to walk to the food hall, among other things, to no avail (*Id.*). He suffered from extreme isolation that was bad for his physical and mental health (*Id.* at 14). Eventually Dr. David gave him a pain medication and authorized him to walk about, but security staff often deprived him of these small accommodations (*Id.* at 5).

Plaintiff alleges that he lodged multiple grievances to Warden Dennison about his need for ADA accommodations (*Id.* at 6). Eventually in early July 2017, Dennison had him transferred to general population and stopped by his cell to tell him that they were working on clearance to let Plaintiff move about the facility to the law library, and that they had secured permission for him to walk to dietary and the yard/gym (*Id.* at 6-7).

On July 17, 2017, Plaintiff was confronted by Lieutenant Bradford in the dietary hall because Bradford believed he did not have permission to attend dietary (*Id.* at 7-8). Bradford ignored information from another correctional officer that Plaintiff did in fact have permission to be there (*Id.* at 8). Instead, he became visibly angry, wrapped Plaintiff in a bear hug, and dropped

---

[1] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

3

him abruptly on the ground (*Id.* at 8-9). The bear hug and fall caused Plaintiff extreme spinal pain and shock (*Id.* at 9). There were numerous witnesses to the incident (*Id.* at 14). An emergency was declared, and Plaintiff was escorted via wheelchair to the medical ward (*Id.* at 9-10).

At the ward, Plaintiff complained that his legs were burning, shaking, tingling, and that his whole body felt weak (*Id.* at 10). Despite these verbalizations, staff repeatedly attempted to get him to stand (*Id.* at 10). Dr. David authorized a wheelchair and walker and had an x-ray done (*Id.* at 10-12). He never followed up, however, to convey information that the x-ray showed damage left of plaintiff's "thoraclumbar" or to provide treatment (*Id.*). Nursing staff apparently took the wheelchair, because they thought Plaintiff did not need it (*Id.* at 11). Plaintiff believed that this lapse in treatment was particularly egregious for an individual who had preexisting spinal cord injuries and scoliosis (*Id.* at 12). Dr. David ignored or refused to act upon subsequent complaints of severe body-wide pain, numbness, tingling, and decreased right leg strength (*Id.*).

As time progressed, Plaintiff's right leg lost feeling and stopped working (*Id.*). To move about, he had to bend over his walker and drag his leg (*Id.*). He grieved this progression, but apparently his counselor felt the grievances were duplicative and refused to file them (*Id.* at 12-13).

Upon arrival at Menard, medical staff diagnosed Plaintiff with flaccid paralysis of his right leg (*Id.* at 13). Physical therapy was discontinued because medical staff believed it would not improve the situation (*Id.*). Plaintiff concludes that the total loss of use of his right leg was a result of Lieutenant Bradford's actions and the ensuing lack of care (*Id.* at 14-15). He seeks: $3 million dollars compensation combined for the ADA and deliberate indifference issues; $250,000.00 in punitive damages from Lieutenant Bradford; and injunctive relief in the form of the arrest and prosecution of Lieutenant Bradford (*Id.* at 18-19). Plaintiff also asks that his case be handled by

4

former Chief Judge Michael Reagan for efficiency sake, because he has another action pending before Judge Reagan (17-CV-0862) (*Id.* at 19).

## Discussion

*Count 1*

The ADA and Rehabilitation Act prohibit discrimination against qualified individuals because of their physical or mental disability, including a failure to accommodate a disability. *Jaros v. Illinois Dep't of Corrections*, 684 F.3d 667, 671 (7th Cir. 2012). In order to make out a *prima facie* case of discrimination under both the ADA and the Rehabilitation Act, a plaintiff must show: (1) that he suffers from a disability as defined in the statutes, (2) that he is qualified to participate in the program in question, and (3) that he was either excluded from participating in or denied the benefit of that program based on his disability. *Jackson v. City of Chicago*, 414 F.3d 806, 810 (7th Cir. 2005). The Rehabilitation Act further requires that a plaintiff show that the program in which he was involved received federal financial assistance. *Id.* at 810 n.2; *see also* 29 U.S.C. § 794(a). *Novak v. Bd. of Trustees of S. Ill. Univ.*, 777 F.3d 966, 974 (7th Cir. 2015).

The ADA applies to state prisons, and all such institutions receive federal funds. *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206 (1998); *Jaros*, 684 F.3d at 667. Thus, the two statutory schemes are applicable to this situation. "Disability includes the limitation of one or more major life activities, which include walking, standing, bending, and caring for oneself." *Jaros*, 684 F.3d at 672. Plaintiff has scoliosis that inhibits his movement for extended periods of time. He also alleges that his scoliosis got so bad during his time at Shawnee that he completely lost the ability to use his right leg. (Doc. 1, p. 12, 14-15). The allegations in the Complaint suggest that he suffers from a disability as defined in the ADA and Rehabilitation Act.

In *United States v. Georgia*, 546 U.S. 151 (2006), the Supreme Court concluded that a disabled inmate can sue the State for money damages under Title II of the ADA for "deliberate refusal of prison officials to accommodate [the inmate's] disability-related needs in such fundamentals as mobility, hygiene, medical care, and virtually all other prison programs" if the conduct in question also constitutes deliberate indifference in violation of the Eighth Amendment prohibition against cruel and unusual punishment. *Id.* at 157–159. The Seventh Circuit has also recognized that, in a prison setting, access to meals and certain housing facilities, including showers, toilets, and sinks, are among the programs and activities protected by the ADA and the Rehabilitation Act. *Jaros*, 684 F.3d at 672; *see also Phipps v. Sheriff of Cook Cty.*, 681 F. Supp. 2d 899, 916 (N.D. Ill. 2010); *Yeskey*, 524 U.S. 206. Further, if showers and meals are considered "programs" or "activities" which must be accessible to disabled inmates, "then the basic need for an adequately accessible bed may also be viewed as such." *See Simmons v. Illinois Dep't of Corr.*, No. 14-cv-479-JPG, 2014 WL 2159000, at *4 (S.D. Ill. May 23, 2014). Plaintiff alleges that prison officials failed to allow him adequate opportunities to ambulate about the health care ward or the prison with his walker (Doc. 1 at 4-5). He also was restricted from going to the law library or the chow hall, and even when he finally got permission to do so, he was limited by other staff (*Id.* at 6-7). Taking these allegations as true, the Court finds that Plaintiff was deprived of "programs" protected by the ADA and the Rehabilitation Act based on the allegations in the Complaint.

Plaintiff's need for an accommodation seems "obvious" and sufficient to impute that knowledge to prison officials. *See Robertson v. Las Animas Cty. Sheriff's Dep't*, 500 F.3d 1185, 1196–98 (10th Cir. 2007); *Kiman v. New Hampshire Dep't of Corr.*, 451 F.3d 274, 283 (1st Cir. 2006). Furthermore, Plaintiff alleges that he notified Dennison via written grievances and face-to-face interactions. He also alleges that he fully exhausted grievances (which suggests that he

corresponded with the Administrative Review Board and perhaps John Baldwin) (Doc. 1 at 6). Consequently, Count 1 generally states colorable ADA and Rehabilitation Act claims, but that does not end the analysis.

Although Plaintiff has named Warden Dennison and John Baldwin in connection with the factual allegations supporting this claim, the only proper defendant in a claim under the ADA or Rehabilitation Act is the state agency (or a state official acting in his or her official capacity). "[E]mployees of the Department of Corrections are not amenable to suit under the Rehabilitation Act or the ADA. *See* 29 U.S.C. § 794(b); 42 U.S.C. § 12131." *Jaros*, 684 F.3d at 670 (additional citations omitted). Defendant Dennison will therefore be dismissed with prejudice from Count 1, as he is not susceptible to these claims under the ADA or Rehabilitation Act. Count 1 shall proceed against John Baldwin. Count 1 also shall proceed against the Illinois Department of Corrections, and the Clerk shall be directed to add this entity as a party Defendant.[2] The ultimate success of these claims will likely rise and fall with a more detailed understanding of the Administrative Remedies used, but at this juncture, Plaintiff has stated enough to allow this claim to proceed beyond screening.

*Count 2*

In Count 2, Plaintiff seeks to hold Dennison and Baldwin responsible under the Illinois Isolated Confinement Act—House Bill 5417. It appears, however, that this House Bill has not yet been passed into law, so it is not a valid source for a claim.[3] Accordingly, Count 2 will be dismissed as to all Defendants.

---

[2] Federal Rule of Civil Procedure 21 states in pertinent part: "On motion or on its own, the court may at any time, on just terms, add or drop a party."

[3] http://www.ilga.gov/legislation/BillStatus.asp?DocNum=5417&GAID=13&DocTypeID=HB&LegId=94825&SessionID=88&GA=99. The Bill Status page reflects that this Act was last addressed on January 10, 2017, at which time it was left in "session sine die" status, meaning that it was left unpassed and with no future date to address it.

*Count 3*

Plaintiff alleges that Lieutenant Bradford exercised excessive force when he picked him up and dropped him in the chow hall without provocation. The intentional use of excessive force by prison guards against an inmate without penological justification constitutes cruel and unusual punishment in violation of the Eighth Amendment and is actionable under Section 1983. *See Wilkins v. Gaddy*, 559 U.S. 34 (2010); *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000). An inmate must show that an assault occurred and that "it was carried out 'maliciously and sadistically' rather than as part of 'a good-faith effort to maintain or restore discipline.'" *Wilkins*, 559 U.S. at 40 (*citing Hudson v. McMillian*, 503 U.S. 1, 6 (1992)). An inmate seeking damages for the use of excessive force need not establish serious bodily injury to make a claim, but not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Wilkins*, 559 U.S. at 37-38 (the question is whether force was de minimis, not whether the injury suffered was de minimis); *see also Outlaw v. Newkirk*, 259 F.3d 833, 837-38 (7th Cir. 2001).

Here, Plaintiff has set forth sufficient factual and legal allegations to proceed with a claim for excessive force against Lieutenant Bradford. He alleges that Bradford approached him, engaged in verbally harassing behavior towards him, and then picked him up and dropped him, even after learning from another guard that Plaintiff had permission to be in the dining hall. Plaintiff's account of the incident does not suggest that there was chaos occurring in the dining hall or that he posed a risk by his presence. Accordingly, Count 3 for deliberate indifference via excessive force shall proceed against Defendant Bradford.

*Count 4*

Federal courts hearing a federal claim may entertain state law claims by exercising supplemental jurisdiction over them, but only when the state and federal claims are part of one

constitutional "case;" that is, they derive from a "common nucleus of operative fact" and would ordinarily be tried together. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966); *Bailey v. City of Chicago*, 779 F.3d 689, 696 (7th Cir. 2015). Here, Plaintiff alleges that he would like to maintain an Illinois tort claim for assault and battery against Defendant Bradford. The facts critical to this claim stem from a common nucleus of facts involved in Count 3. Accordingly, the Court will exercise discretion to allow this claim to proceed.

*Count 5*

In Count 5, Plaintiff further alleges that Defendant Bradford should be subjected to enhanced penalties for an aggravated assault as defined by Illinois law. For the same reasons set forth in Count 4, the Court also will exercise supplemental jurisdiction over Count 5 against Defendant Bradford.

*Count 6*

The Eighth Amendment prohibits the cruel and unusual punishment of inmates and imposes an obligation upon prison officials to provide them with adequate medical care for serious medical conditions. *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011). An Eighth Amendment claim for the denial of medical care has an objective and a subjective component. The objective component requires an inmate to demonstrate that he suffers from an "objectively, sufficiently serious" medical condition. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). A condition is considered sufficiently serious if failure to treat it could result in the unnecessary and wanton infliction of pain. *See Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). The subjective component requires a plaintiff to demonstrate that each individual defendant responded to his serious medical condition with deliberate indifference.

9

This occurs when an official "know[s] of and disregard[s] an excessive risk to inmate health." *Greeno*, 414 F.3d at 653.

The Eighth Amendment does not give prisoners entitlement to "demand specific care" or "the best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Further, a defendant's inadvertent error, negligence or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation. *See Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008). The mere fact that a prescribed treatment has proven ineffective does not rise to the level of deliberate indifference. *Duckworth*, 532 F.3d at 680.

The Seventh Circuit recently discussed the parameters of deliberate indifference by a prison doctor by selecting a less effective course of treatment or delaying treatment at great length in *Petties v. Carter,* 836 F.3d 722 (7th Cir. 2016). Petties, an IDOC inmate, suffered an Achilles tendon rupture, but the main treating doctor did not give him all of the suggested treatments in the prison healthcare protocol, nor did he prioritize Petties seeing a specialist or getting the care recommended by the specialist. The Seventh Circuit emphasized that it can be difficult for an inmate to establish deliberate indifference against a prison doctor because usually only circumstantial evidence is available to show that a doctor's actions deviated from the medical standard of care, and such a deviation was knowing and greater than mistake. Reducing years of precedent to a concise discussion, the Seventh Circuit commented:

> But repeatedly, we have rejected the notion that the provision of some care means the doctor provided medical treatment which meets the basic requirements of the Eighth Amendment. Rather, the context surrounding a doctor's treatment decision can sometimes override his claimed ignorance of the risks stemming from that decision. When a doctor says he did not realize his treatment decisions (or lack thereof) could cause serious harm to a plaintiff, a jury is entitled to weigh that explanation against certain clues that the doctor did know. Those context clues might include the existence of documents the doctor regularly consulted which

> advised against his course of treatment, evidence that the patient repeatedly complained of enduring pain with no modifications in care, inexplicable delays or departures from common medical standards, or of course, the doctor's own testimony that indicates knowledge of necessary treatment he failed to provide. While evidence of malpractice is not enough for a plaintiff to survive summary judgment on an Eighth Amendment claim, nor is a doctor's claim he did not know any better sufficient to immunize him from liability in every circumstance. Otherwise, prison doctors would get a free pass to ignore prisoners' medical needs by hiding behind the precedent that medical malpractice is not actionable under the Eighth Amendment. Prisoners are not entitled to state-of-the art medical treatment. But where evidence exists that the defendants knew better than to make the medical decisions that they did, a jury should decide whether or not the defendants were actually ignorant to risk of the harm that they caused.

*Petties,* at 731. And in the *Petties* case, the Seventh Circuit found that deposition testimony of doctors in that case and other evidence was sufficient to create an issue of fact for a jury about the standard of care provided.

Plaintiff alleges a serious medical condition because he had pre-existing spine problems and he alleges that when he was dropped in the food hall he suffered further spine issues that ultimately led to the paralysis of his right leg. He insists that Dr. David was deliberately indifferent for failing to send him to an outside doctor, despite being informed on numerous occasions of Plaintiff's ailments including tingling, numbness, loss of use of his right leg, and extreme pain. Inmates are not necessarily entitled to external care, so it is a close call whether this allegation identifies deliberate indifference. Spinal conditions can be very serious injuries, however, so out of an abundance of caution, the Court will allow this claim to proceed so that a record can be developed about Dr. David's credentials, his knowledge about spine injuries, and the appropriateness of the treatment he rendered. This case bears similarity to the type of factual issues addressed in *Petties,* so it is appropriate for Count 6 to proceed against Defendant Dr. David.

*Count 7*

Plaintiff also alleges that Dr. David exhibited deliberate indifference to this serious medical condition by refusing to consult with him about an x-ray or refusing to send him to an external spine specialist. Although an inmate is not entitled to care of his choosing, it is possible that Plaintiff should have been consulted about the results of the x-ray, given the pain and subsequent symptoms he experienced following the alleged assault by Defendant Bradford. *See Petties,* 836 F.3d at 731. From the face of the complaint, Plaintiff has identified sufficient facts to allow this claim to proceed beyond screening. Medical records and other such discovery will shed light on the quality, quantity, and timeliness of the care provided. Accordingly, Count 7 will proceed against Defendant Dr. David.

**Request for Injunctive Relief**

Plaintiff requests injunctive relief in the Complaint and seeks an Order that Defendant Bradford be criminally prosecuted in Illinois for his assault (Doc. 1 at 18). Although this Court will exercise supplemental jurisdiction over the Illinois civil (tort) law claims, Plaintiff brings in relation to his encounter with Bradford, the Court cannot exercise criminal jurisdiction, nor can it direct that Defendant Bradford be prosecuted. Plaintiff likely needs to raise this issue via the available administrative channels in the prison, and ultimately in Illinois state court. Accordingly, to the extent he seeks injunctive relief, that request must be denied as it is not of a nature this Court can grant. Additionally, Plaintiff now resides at Menard, but it appears that Defendant Bradford is at Shawnee. Even if the Court could grant injunctive relief between the two, it likely could not do so absent a showing that Plaintiff is likely to go back to Shawnee and to be in danger. *See Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996) (When an inmate is transferred to another prison, his request for injunctive relief against officials at the first prison is generally moot, unless "he can

demonstrate that he is likely to be retransferred" back to the prison) (citation omitted); *Maddox v. Love*, 655 F.3d 709, 716 (7th Cir. 2011). Plaintiff has made no such showing.

Plaintiff also requests that his case be handled by former Chief District Judge Michael Reagan because Plaintiff already has a case pending before that judge. Plaintiff is advised, however, that Judge Reagan retired on March 31, 2019, so it is not possible to transfer this matter for joint handling. The case will proceed as assigned.

### **Disposition**

**IT IS HEREBY ORDERED** that **COUNT 1** will proceed as to John Baldwin and the Illinois Department of Corrections, but is **DISMISSED** with prejudice as to Jeffrey Dennison. Defendant Illinois Department of Corrections will be added to the docket sheet as a defendant in Count 1.

**IT IS FURTHER ORDERED** that **COUNT 2** will be dismissed without prejudice as to Defendants John Baldwin and Jeffrey Dennison because it fails to identify a valid Illinois law over which this Court could exercise supplemental jurisdiction.

**IT IS FURTHER ORDERED** that **COUNTS 3, 4, and 5** shall proceed against Defendant Lieutenant Bradford.

**IT IS FURTHER ORDERED** that **COUNTS 6 and 7** shall proceed against Defendant Dr. David.

The Clerk of Court is **DIRECTED** to add the **ILLINOIS DEPARTMENT OF CORRECTIONS**, as a defendant for Count 1 as explained in the body of this Order.

**IT IS FURTHER ORDERED** that the Clerk of Court shall prepare for Defendants John Baldwin (official capacity only), Illinois Department of Corrections, Lieutenant Bradford, and Dr. David: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and

(2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendants' place of employment as identified by Plaintiff. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that, if a defendant can no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

**IT IS FURTHER ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed in forma pauperis is granted. See 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 7 days after a transfer or other change in address occurs. Failure to comply with this order will cause a

delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: 5/2/2019**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature.